CINCINNATI BAR ASSOCIATION *v.* BERTSCHE.

[Cite as *Cincinnati Bar Assn. v. Bertsche* (1998), 84 Ohio St.3d 170.]

(No. 98–824—Submitted August 19, 1998—Decided December 9, 1998.)

172

*James K. Rice, Nancy B. Herbert, David T. Croall* and *Edwin W. Patterson III,* for relator.

*David J. Boyd,* for respondent.

*Per Curiam.* We adopt the findings of the board. Especially troubling to us, as it was to the bankruptcy court in Cincinnati, is respondent's receipt of funds from Associates upon the refinancing of his clients' real estate. As that court observed, respondent was either charging his clients fees for finding appropriate financing, in which case he failed to file the necessary fee applications with the bankruptcy court, or respondent was receiving finder's fees from Associates for bringing clients to it, in which case respondent was representing Associates and was in a conflict-of-interest situation.

Even if we accept respondent's argument that he represented his Chapter 13 clients in the refinancings, we cannot adopt his conclusion that he could set fees unilaterally and that fee applications and disclosures were not necessary. EC 2–18 of our Ethical Considerations provides that an attorney should reach a full and clear agreement with his client about the basis of his fee before he undertakes the work. Yet respondent did not tell his clients that he would receive a fee for negotiating their loans with Associates. It was only at the time when the loans were closed that respondent's clients, eager to complete the transactions and exit from Chapter 13, were informed that a fee for respondent would be added to their loans. Predictably, they did not object. This situation is similar to *Columbus Bar Assn. v. Zauderer* (1997), 80 Ohio St.3d 435, 438, 687 N.E.2d 410, 412–413, in which we suspended an attorney who, in control of settlement funds, attempted a unilateral alteration of his contingent fee contracts with his clients before disbursing the money.

Moreover, as Bankruptcy Judge Vincent Aug observed at the *en banc* hearing in bankruptcy court, the bankruptcy process is, in part, a process to protect debtors. "And judges * * * look to see whether or not a person is doing something that is unwise * * *." To protect debtors from attorneys who overreach, Section 329, Title 11, U.S.Code, and Fed.R.Bankr.P. 2016(b) require that the attorney for a debtor disclose to the bankruptcy court the compensation paid or promised for services and the source of the compensation. The rule specifically requires the attorney to file a "supplemental statement" within fifteen days "after any payment or agreement not previously disclosed." Fed. R.Bankr.P. 2017(b) provides for an examination of these disclosed payments "for services in any way related to the case." These rules are "premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client." Advisory Committee Note to Fed.R.Bankr.P. 2017.

Respondent neither advised his clients in advance of his fees for loan refinancing nor filed the required applications to inform the court of those fees. As a

consequence, respondent set his fee unilaterally, with no input from his clients or the court. Thus, if respondent represented his clients in the loan transactions, he failed to adhere to our Ethical Considerations and failed to comply with the federal bankruptcy rules.

The record indicates that at least two of respondent's clients believed that the $1,500 added to their loans was a fee that Associates paid to respondent for referring the clients to it. If such was the case, respondent was in a conflict-of-interest situation. In either this situation or the unilateral-fee-setting situation, respondent was in violation of our disciplinary standards.

Therefore, with respect to the matters involving the six clients for whom respondent arranged financing with Associates, we adopt the conclusions of the board. We also adopt the conclusions of the board relating to respondent's conduct of his law office and handling of office accounts. In addition, we adopt the conclusions of the board in the Berning and Cooper matters. We recognize that serial filings under Chapter 7 and Chapter 13 have been found acceptable in *Johnson v. Home State Bank* (1991), 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66, but because respondent failed to complete the "Chapter 20" program for Campbell, we adopt the board's conclusions in that matter also. Respondent is hereby suspended indefinitely from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.